Vincent Mayo, Esq.
Nevada State Bar Number: 8564
THE ABRAMS & MAYO LAW FIRM
6252 South Rainbow Blvd., Suite 100
Las Vegas, Nevada 89118
Tel: (702) 222-4021
Fax: (702) 248-9750
Email: VMGroup@theabramslawfirm.com
Attorney for Plaintiff/Petitioner

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| IN RE THE APPLICATION OF: | ) |
| | ) |
| VLADIMIR GONZALEZ AMBRIOSO, | ) Civil Action File No.: 2:16-cv-02091-GMN-VCF |
| | ) |
| Plaintiff/Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| CARMEN GARCIA LEDESMA, | ) |
| | ) |
| Defendant/Respondent. | ) |

## PETITIONER'S BRIEF REGARDING WITNESSES TESTIFYING VIA VISUAL CONFERENCING / TRANSMISSION

*The Convention on the Civil Aspects of International Child Abduction*,
done at the Hague on 25 Oct 1980
*International Child Abduction Remedies Act*, 42 U.S.C. 11604
NRS 125A.120

Petitioner, VLADIMIR GONZALEZ AMBRIOSO, by and through his attorney of record, Vincent Mayo, Esq., of The Abrams & Mayo Law Firm, hereby submits his Brief requesting an order that his witnesses located out of the State of Nevada be permitted to testify via visual/audio transmission, per the Court's Order from the October 4, 2016 hearing.

///

///

**I.**
**LEGAL POINTS IN SUPPORT OF OUT OF COUNTRY WITNESSES TESTIFYING VIA VIDEO CONFERENCING**

Article 2 of the Hague Convention on the Civil Aspects of Child Abduction requires contracting states to "use the most expeditious procedures available" in regards to litigation.[1] Article 11 reinforces this requirement, stating that "[t]he judicial or administrative authorities of Contracting States shall act expeditiously in proceedings for the return of children." The Hague Convention Guide to Good Practice under the *Hague Convention, Part II,* states that "Expeditiousness is essential at all stages of the Convention process..."[2] "Expeditious procedures should be viewed as procedures that are both fast *and efficient*."[3] The American Heritage Roget's Dictionary defines efficient as something "acting effectively with minimal waste."

Due to the emphasis the Hague Convention places on expeditiousness, the Hague Convention is designed to make Hague cases easier to establish and faster to complete, especially for the benefit of the Petitioner.[4] The Hague Convention is also designed to maximize the accessibility of the Convention to left-behind parents by removing financial and other obstacles that can bar a Petitioner from advancing their case.[5]

The Hague Convention accomplishes these goals through a number of examples. Article 30 of the Convention provides that an application, together with the documents

---

[1]   Hague Convention, Article 2.

[2]   https://assets.hcch.net/upload/abdguide2_e.pdf.

[3]   https://www.hcch.net/en/publications-and-studies/details4/?pid=2781. Emphasis added.

[4]   Jeremy D. Morley, *The Hague Abduction Convention: Practical Issues and Procedures for Family Lawyers*, Section 2.11 at 34 (ABA Publishing 2012).

[5]   Rhona Schuz, *The Hague Child Abduction Convention: A Critical Analysis*, Section 2 at 46 (Hart Publishing 2014).

appended to it, shall be admissible in evidence.[6] The International Child Abduction Remedies Act (ICARA) has a similar provision, providing that no authentication is required of any Hague return Petition.[7]  Article 14 permits the Courts to take judicial notice of the applicable law in the requesting country in order to eliminate the need to have expert witnesses testify.[8] The Hague Convention does not require the posting of a bond to guarantee payment of costs and expenses.[9] No legalization or similar formality may be required in the context of the Convention.[10] The Courts are even authorized to return the child to the requesting country at any time without any formal proceedings.[11] Hence, the use of expeditious procedures is essential to the operation of the Hague Convention. A number of Courts have heeded this urgency, including the 9th Circuit in *Holder v. Holder*, 392 F.3d 1009 (9th Cir. 2004).[12]

These expeditious procedures have even been applied to witnesses in foreign countries.  In *Haimdas v. Haimdas*, 720 F. Supp.2d 183 (E. Dist. N.Y 2010), which consisted of  a Hague Convention child abduction proceeding, the District Court held that the Petitioner, who could not enter the United States due to the lack of a Visa, could testify from live video link from England. It is of note that the District Court authorized

---

[6]   Hague Convention, Article 30.

[7]   42 U.S.C. 11605.

[8]   Hague Convention, Article 14.

[9]   Hague Convention, Article 22.

[10]   Hague Convention, Article 23.

[11]   Hague Convention, Article 18.

[12]   *See also March v. Levin*, 249 F.3d 462 (6th Cir. 2001); *Menachem v. Frydman-Menachem*, 240 F. Supp.2d 437 (D. Md. 2003); *Chafin v. Chafin*, 133 S. Ct. 1017l, 1028 (2013)("Expedition will help minimize the extent to which uncertainty adds to the challenges confronting both parents and child").

this under FRCP 43(a).[13] In *Clarke v. Clarke*, 2008 U.S. District Lexis 41600 (E.D. Pa. 2008), another Hague Convention child abduction proceeding, the federal court permitted witnesses—even expert witnesses—to testify via telephone from a foreign country.[14]   The distance, cost of travel and time spent away from work traveling to testify were reasonable factors warranting the witnesses be permitted to testify through telephone.

It is of note that federal courts have permitted witnesses to testify through telephone / visual transmission in cases involving distances and travel far less than those in *Haimdas* and *Clarke.* The 9th Circuit Court of Appeals held in *Scheller v. Am. Med. Response, Inc.*, 2011 U.S. Dist. LEXIS 68583 (2011) that where the witnesses were located out of state (100 miles to 184 miles), the cost to travel (via car) to testify was "significant" and the need to testify in person would disrupt their daily lives (two days). testifying via audio visual contemporaneous transmission was warranted.[15]   In *Federal Trade Commission v. Swedish Match North America*, 197 F.R.D 1, 2 (D.D.C. 2000), the Court permitted a FRCP 43(a) request to allow a witness to testify via video conferencing based on the finding that the distance to travel from Oklahoma to Washington, D.C., was too great and having to travel an "inconvenience."   In *Beltran-Tirado v. INS*, 213 F.3d 1179 (9th Cir. 2000), the 9th Circuit upheld the trial court's

---

[13]   FRCP 43(a) states that with "good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location."

[14]   *See also* Jeremy D. Morley, *The Hague Abduction Convention: Practical Issues and Procedures for Family Lawyers*, Section 2.11 at 36 (ABA Publishing 2012). *See* the Motion filed on April 17, 2008, as well as the Order filed April 18, 2008, attached as Exhibit "1."

[15]   It is of note that the Appellate Court noted that while many believe satisfying the requirements of FRCP 43(a) is a "high burden," it in fact is not, as long as there are some reasonable safeguards in effect.

finding—which was scant on findings—that a witness out of the State of California could testify via telephone as long as they were subject to cross-examination.[16]

## II.
## LIST OF PETITIONER'S WITNESSES, TESTIMONY TO BE GIVEN, TIME REQUIRED AND ARGUMENTS FOR TESTIFYING VIA VIDEO CONFERENCING

1.      Elpidio Gonzalez Ambrioso,
        Calle Diamante, MZ. 9, Lote 15,
        SM. 524, Residencial Santa Fe,
        Cancun, Quintana Roo, Mexico, C.P. 77534

Mr. Elpidio Gonzalez Ambrioso is the Petitioner's brother and the child's uncle. Mr. Elpidio Gonzalez Ambrioso will testify as to the Petitioner's relationship with the child, that the Petitioner lived with the child prior to and at the time Ms. Garcia removed the child from Mexico, that there was no consent or subsequent acquiescence on Petitioner's part to Respondent absconding with the child to the United States, that there was no domestic violence by Petitioner against Ms. Garcia and that there is no grave risk of harm to the child by returning to his father in Cancun, Mexico and to refute the other claims made by Respondent. Mr. Elpidio Gonzalez Ambrioso would testify for about 60 minutes on direct examination, although efforts are being made to have Mr. Elpidio Gonzalez Ambrioso present in Court for Trial.

2.      Carmen Lopez Torres
        Goss, No. 168 – Interior, Entre Jhonson Y Libertad
        Santos Suarez, MCPIO. 10 De Octubre
        La Habana, Cuba, C.P. 13200

Ms. Lopez Torres was the child's prior nanny. Ms. Lopez Torres will testify that she regularly saw the child, is aware of Petitioner's relationship with the child, that the Petitioner lived with the child prior to and at the time Respondent removed the child

---

[16]   *See also Alderman v. SEC*, 104 F.3d 285, 288 n.4 (9th Cir. 1997); *see also Official Airline Guides, Inc. v. Churchfield Publications, Inc.*, 756 F. Supp. 1393, 1398-99 n.2 (D. Or. 1990), *aff'd*,

from Mexico, that there was no domestic violence by Petitioner against either Respondent or the child and that there is no grave risk of harm to the child by returning to his father in Cancun, Mexico. While Ms. Lopez Torres would be expected to testify for 20 minutes on direct examination, Petitioner is told she may not appear to testify based on Respondent's family in Cuba threatening her if she does. If Ms. Lopez Torres is not available, Petitioner shall present her Affidavit, which is attached to Petitioner's Hague Convention application, as well as his Petition. Mr. Gamboa Marino would testify for about 20 minutes on direct examination. Ms. Lopez Torres has nominal funds and is not in a position to travel for 3 to 4 days, spend $1,500 on six flights (as there are no direct flights between Las Vegas and Havana, Cuba), taxis, a hotel, meals and miss 3 to 4 days of work, simply to testify for 20 minutes on direct examination.

> 3.     Pablo Oscar Gamboa Marino, the parties' neighbor and friend
>        Calle Turguesa, No. 54, MZ. 81
>        SM. 320
>        Cancun, Quintana Roo, Mexico, C.P. 77536

Mr. Gamboa Marino was Petitioner's neighbor. He will testify that he lived next door to the Petitioner, the child and Respondent, regularly witnessed the parties and child interact, was aware of the child living with the Petitioner prior to and at the time Respondent removed the child from Mexico, did not witness any domestic violence by Petitioner against Respondent or the child and that there is no grave risk of harm to the child by returning to his father in Cancun, Mexico. and to refute the other claims made by Respondent. Mr. Gamboa Marino would testify for about 20 minutes on direct examination. Mr. Gamboa Marino is not in a position to travel for 3 to 4 days, spend $1,500 on four flights (as there are no direct flights between Las Vegas and Cancun), taxis, a hotel, meals and miss 3 to 4 days of work as he has work obligations, simply to testify for 20 minutes.

4.      Dr. Vladimir Francisco Ojeda Sabina
        C. Argentina Mza 33 LT 18
        Supmza 57 Resid Las Americas 775
        Benito Juarez Q. Roo.

Dr. Jeronimo Alvarez is the child's pediatrician. He will testify as to the child's care by Petitioner and lack of knowledge of any domestic violence against the minor child. He is expected to testify on direct examination for about 20 minutes. Dr. Jeronimo Alvarez is not in a position to travel for 3 to 4 days, spend $1,500 on four flights, taxis, a hotel, meals and miss 3 to 4 days of work as he has a busy medical practice and has already taken significant time off this year, simply to testify for 20 minutes.

5.      Emmanuel Perez, an attorney from Florida
        901 Ponce De Leon Blvd.
        Coral Gables, FL 33134

Mr. Perez, Esq., is Petitioner's counsel from Coral Gables, Florida. He will testify that he was retained by Petitioner to assist him in having his son returned to Cancun Mexico and efforts made on behalf of Petitioner to accomplish this goal. He is expected to testify on direct examination for about 15 minutes. Mr. Perez is not in a position to travel for 3 to 4 days, spend $1,500 on four flights, taxis, a hotel, meals and miss 3 to 4 days of work as he has a busy law practice, simply to testify for 15 minutes.

6.      Delia Maria Iglesias Osoria
        Calle Antuco lote 8
        Manzana 72 Súper Manzana 310, Residencial Cumbres
        Cancún Quintana Roo México 77536

Ms. Iglesias Osoria is Petitioner's ex-wife. Ms. Iglesias Osoria will testify as to her knowledge of Petitioner's relationship with the child, that Petitioner owns and makes a living from his construction business, the circumstances surrounding the incident in Belize and the other allegations being made by Respondent. Ms. Iglesias Osoria would

testify for about 30 minutes on direct examination. Ms. Iglesias Osoria has nominal funds and is not in a position to travel for 3 to 4 days, spend $1,500 on four flights, taxis, a hotel, meals and miss 3 to 4 days of work, simply to testify for 30 minutes on direct examination.

   7.    Dr. Roberto Jeronimo Alvarez
         Hospital Amerimed, Consultorio numero 207
         Bachupte y Bonampak, junto a Plaza Las America, Cancun, Q. Ro, Mexico

Dr. Jeronimo Alvarez is also the child's pediatrician. He will testify as to the child's care by Petitioner and lack of knowledge of any domestic violence against the minor child. He is expected to testify on direct examination for about 15 minutes. Dr. Jeronimo Alvarez is not in a position to travel for 3 to 4 days, spending at least $1,500 on four flights, taxis, a hotel, meals and miss 3 to 4 days of work as he has a busy medical practice and has already taken significant time off this year, just to testify for about 15 minutes.

   8.    Dr. Liber Calderon Herrera
         Hospital Amerimed, Consultorio numero 207
         Bachupte y Bonampak, junto a Plaza Las America, Cancun, Q. Ro, Mexico

Dr. Calderon Herrera was Respondent's doctor. He will testify as to the child's care by Petitioner immediately after birth and refute allegations made by Respondent, including a lack of knowledge of any domestic violence against the minor child or Respondent. He is expected to testify on direct examination for about 15 minutes. Dr. Dr. Calderon Herrera is not in a position to travel for 3 to 4 days, spending at least $1,500 on four flights, taxis, a hotel, meals and miss 3 to 4 days of work as he has a busy medical practice and has already taken significant time off this year, just to testify for about 15 minutes.

9.      Saul Alejandro Cetzal Perera
        C/O The Abrams & Mayo Law Firm
        6252 South Rainbow Blvd., Suite 100
        Las Vegas, Nevada 89118

Mr. Cetzal Perera is a friend of Petitioner's. He will testify as to the relationship between Petitioner, Respondent and the child, the child living with the Petitioner prior to and at the time Respondent removed the child from Mexico, and refute the allegations made by Respondent. Mr. Cetzal Perera would testify for about 20 minutes on direct examination. Mr. Cetzal Perera is not in a position to travel for 3 to 4 days, spend $1,500 on four flights, taxis, a hotel, meals and miss 3 to 4 days of work as he has work obligations, simply to testify for 20 minutes.

10.     Reynaldo Vargas Bocanegra
        C/O The Abrams & Mayo Law Firm
        6252 South Rainbow Blvd., Suite 100
        Las Vegas, Nevada 89118

Mr. Vargas Bocanegra will testify as to the documentation provided by Petitioner and lives in Cancun, Mexico. Mr. Vargas Bocanegra would testify for about 10 minutes on direct examination. Mr. Vargas Bocanegra is not in a position to travel for 3 to 4 days, spend $1,500 on four flights, taxis, a hotel, meals and miss 3 to 4 days of work as he has work obligations, simply to testify for 10 minutes. However, based on the authentication of the documents, Mr. Vargas Bocanegra's testimony may not be necessary.

11.     Maribel Maceo
        C/O The Abrams & Mayo Law Firm
        6252 South Rainbow Blvd., Suite 100
        Las Vegas, Nevada 89118

Ms. Maceo is a friend of Petitioner's and lives in Cancun, Mexico. She will testify as to the relationship between Petitioner, Respondent and the child, the child living with

the Petitioner prior to and at the time Respondent removed the child from Mexico, and refute the allegations made by Respondent. Ms. Maceo would testify for about 15 minutes on direct examination. Ms. Maceo is not in a position to travel for 3 to 4 days, spend $1,500 on four flights, taxis, a hotel, meals and miss 3 to 4 days of work as he has work obligations, simply to testify for 15 minutes.

12.    Elaine Diaz Calderon
        C/O The Abrams & Mayo Law Firm
        6252 South Rainbow Blvd., Suite 100
        Las Vegas, Nevada 89118

Ms. Diaz Calderon will testify as to the documentation provided by Petitioner and lives in Cancun, Mexico. Ms. Diaz Calderon would testify for about 10 minutes on direct examination. Ms. Diaz Calderon is not in a position to travel for 3 to 4 days, spend $1,500 on four flights, taxis, a hotel, meals and miss 3 to 4 days of work as he has work obligations, simply to testify for 10 minutes. However, based on the authentication of the documents, Ms. Diaz Calderon's testimony may not be necessary.

As the Court can see, other than Petitioner and his brother, Petitioner's witnesses will testify on average for about 20 minutes on direct examination, with their testimony limited to specific issues. All of the witnesses reside far from Nevada, with Ms. Lopez Torres residing in Cuba, Ms. Perez residing in south Florida and the remaining witnesses all residing in Cancun, Mexico. All of the witnesses work, with two of them being doctors and surgeons, one being an attorney, two being busy business owners and one being a nanny with limited funds. Requiring said individuals to spend the time required to travel on multiple flights over several days, spending at least $1,500 on travel just to testify on average for 20 minutes is not expeditious or practical. It is also not necessary as sufficient safeguards will be in place in Cancun. The witnesses identities will be confirmed, they will testify in a room away from other witnesses

(thereby satisfying the exclusionary rule), sworn in and most importantly, subject to cross examination by Respondent's counsel.[17] Further, identical, verified copies of exhibits will be available to the witnesses.

Therefore, under such circumstances, it is expeditious and fair to allow Petitioner's witnesses to testify via visual conferencing / transmission. Said testimony constitutes good cause and compelling circumstances under FRCP 43(a) and the unique facts of this Hague Convention case. Further, if federal appellate courts have found in other cases that lesser distances required to be traveled, less time required for said travel and testimony given and less cost incurred all warranted the witnesses testifying via visual conferencing / transmission, even Respondent cannot argue such a request is also not warranted in this matter.[18]

### III.
### CONFIRMATION THAT NO BRIEFING IS REQUIRED AT THIS TIME PERTAINING TO THE APPLICABILITY OF THE MEXICAN STATE LAW REGARDING AS TO CUSTODIAL RIGHTS

The Court's October 4, 2016 Order states that in addition to this Brief by Petitioner regarding his witnesses testifying via visual conferencing / transmission, the parties would include a section on the applicability of the Mexican state law to the issue of custodial rights. However, at the October 4th hearing, the parties stipulated to the Mexican state law that would govern custodial issues but that the actual factual determination of same depends on the evidence and therefore is an issue to be briefed in the parties' individual Trial Brief's due in early December 2016 and adjudicated at Trial

---

[17] While it is anticipated Respondent will attempt to argue that having to cross examine witnesses via visual conferencing will "dilute" her ability to do so, it must be remembered that the Hague Convention already places restrictions on the traditional trial process. Further, almost every witness – including Respondent's – will be testifying via a translator, meaning the traditional "nuisance and finesse" associated with cross examination will be lost in this case.

[18] See the applicable cases cited herein.

on December 13 and 14, 2016.  This was confirmed by the Courtroom Deputy earlier today and the information conveyed to Respondent's counsel thereafter. Therefore, the issue will not be briefed at this time.

## IV.
## RELIEF REQUESTED

Based on the forgoing, Petitioner respectfully requests an order permitting his witnesses appear and testify for Trial via visual conferencing / transmission, subject to any specific guidance this Court may have on coordinating said appearances.

Respectfully submitted,

Dated: Tuesday, October 11, 2016.

THE ABRAMS & MAYO LAW FIRM
6252 South Rainbow Blvd., Suite 100
Las Vegas, Nevada 89118
Tel: (702) 222-4021
Fax: (702) 248-9750
Email: VMGroup@theabramslawfirm.com
Attorney for Plaintiff/Petitioner

/s/ Vincent Mayo, Esq.                    _
Vincent Mayo, Esq.
Nevada State Bar Number: 8564

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing *Petitioner's Brief Regarding Witnesses Testifying Via Visual Conferencing / Transmission* was filed electronically with the United States District Court – District of Nevada in the above-entitled matter on Tuesday, October 11, 2016.  Electronic service of the foregoing document shall be made in accordance with the Master Service List, pursuant to LR IC 4-1, as follows:

Emily McFarling, Esq.
Attorney for Defendant/Respondent


*/s/ David J. Schoen, IV, ACP*_____
An Employee of The Abrams & Mayo Law Firm

# EXHIBIT 1

# EXHIBIT 1

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL CLARKE,                          )
                                         )
        Plaintiff,                       )
                                         )        C.A. No. 08-690
v.                                       )
                                         )
KRISTEN CLARKE,                          )
                                         )
        Defendant.                       )

## ORDER

AND NOW this _____ day of April, 2008, having reviewed the Motion To Allow Susan

Warda, Donna Watts and a New South Wales Police Officer To Appear Via Telephone, the Motion is

HEREBY GRANTED.

_____
The Honorable Lawrence F. Stengel

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL CLARKE,                          )
                                         )
        Plaintiff,                       )
                                         )      C.A. No. 08-690
v.                                       )
                                         )
KRISTEN CLARKE,                          )
                                         )
        Defendant.                       )

## MOTION TO ALLOW SUSAN WARDA, DONNA WATTS AND A
## NEW SOUTH WALES POLICE OFFICER TO APPEAR VIA TELEPHONE

Plaintiff Michael Clarke ("Mr. Clarke") by and through his undersigned counsel, hereby submits this Motion to Allow Susan Warda, Principal, Accredited Specialist, Family Law; Donna Watts and a police officer from the New South Wales Police Department, to appear at the April 22 and 23, 2008 hearing via telephone, and states in support thereof as follows:

1.      On or about February 13, 2008, Mr. Clarke filed the instant action pursuant to the Convention on the Civil Aspects of International Child Abduction ("The Hague"). Due to the nature of this matter, the Court appropriately scheduled a trial on the Petition. Specifically, the Court scheduled a hearing for April 22 and 23, 2008.

2.      Mr. Clarke wishes to call certain witnesses at trial on April 22 and/or 23, 2008. Among those witnesses are Susan Warda, Principal, Accredited Specialist, Family Law an attorney practicing in the area of family law in Australia ("Warda"); Mr. Clarke's sister Donna Watts ("Ms. Watts") and a police officer from the New South Wales police department in Australia ("Officer")(collectively referred to as the "Witnesses").

3.      All of the witnesses listed above reside in Australia. In order to appear for trial each witness would be required to travel approximately 23 hours to reach Philadelphia. They would each

need to stay overnight at least one night and then board return flights and travel back to Australia. This time requirement in and of itself is burdensome. The time each witness would be required to dedicate to appearing before the Honorable Court is, however, not the only extenuating fact. There is significant cost associated with travel from Australia. Mr. Clarke is already expending significant funds in connection with this proceeding.

4.      In an attempt to minimize expenses, yet still allow the Court to gather necessary information, Mr. Clarke requests leave of this Court to permit the Witnesses to appear on April 22, 2008 and/or April 23, 2008 via telephone.

5.      Opposing counsel has advised that she does not oppose this motion.

6.      Due to the expedited trial schedule, Mr. Clarke is filing the subject motion for consideration by the Court prior to the April 22, 2008 hearing.

FOX ROTHSCHILD LLP

By: _____
Judy M. Springer, Esquire
Fox Rothschild LLP
2000 Market Street, Tenth Floor
Philadelphia, PA  19103-3291
(215) 299-2000

*Attorneys for Plaintiff, Michael Clarke*

Date:   April 17, 2008

## CERTIFICATE OF SERVICE

Service of the forgoing Motion To Allow Susan Warda, Donna Watts and a New South Wales Police Officer To Appear Via Telephone was made by hand delivery this 17th day of April, 2008, addressed to:

> Joni J. Berner, Esquire
> Berner & Klaw
> 1528 Walnut Street
> Suite 1100
> Philadelphia, PA 19102

Judy M. Springer, Esquire

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL CLARKE,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 08-690** |
| | : | |
| **KRISTEN CLARKE,** | : | |
| **Defendant** | : | |

# O R D E R

**STENGEL, J.**

    **AND NOW**, this 18th day of April, 2008, upon consideration of plaintiff's Motion to Allow Susan Warda, Donna Watts and a New South Wales Police Officer to Appear via Telephone (Document #7), it is hereby **ORDERED** that the motion is **GRANTED**.  The witnesses are permitted to testify via telephone on April 22 and April 23, 2008.


                             BY THE COURT:


                             _/s/ Lawrence F. Stengel_____
                             LAWRENCE F. STENGEL, J.